Nos. 2016-1476, -1514, -1515

# United States Court of Appeals
# for the Federal Circuit

ADVANCED VIDEO TECHNOLOGIES, LLC,

*Plaintiff-Appellant*

v.

HTC CORPORATION, HTC AMERICA, INC.,
BLACKBERRY LTD, BLACKBERRY CORPORATION,
MOTOROLA MOBILITY, LLC, aka Motorola Mobility, Inc.,

*Defendants-Appellees*

Appeals from the United States District Court for the Southern District of
New York in Case Nos. 1:11-cv-06604-CM-RLE, 1:11-cv-08908-CM-RLE,
and 1:12-cv-00918-CM-RLE, Judge Colleen McMahon

## APPELLEES' CONSOLIDATED RESPONSE BRIEF

Heidi L. Keefe
Mark R. Weinstein
Kyle D. Chen

COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304
(650) 843-5000

*Attorneys for
Defendants – Appellees
HTC CORPORATION
and
HTC AMERICA, INC.*

William D. Coston
Jeffri A. Kaminski
Christopher T. La Testa

VENABLE LLP
575 7th Street NW
Washington D.C. 20004

*Attorneys for
Defendants – Appellees
BLACKBERRY LTD.
and
BLACKBERRY
CORPORATION*

Frederick L. Whitmer
Steven D. Moore
D. Clay Holloway
Akarsh P. Belagodu

KILPATRICK
TOWNSEND &
STOCKTON LLP
1100 Peachtree St. NE
Atlanta, GA 30309

*Attorneys for
Defendant – Appellee
MOTOROLA MOBILITY
LLC*

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

ADVANCED VIDEO TECHNOLOGIES, LLC,

v.

HTC CORPORATION, HTC AMERICA, INC., BLACKBERRY LTD,
BLACKBERRY CORPORATION, MOTOROLA MOBILITY, LLC, aka
Motorola Mobility, Inc.,

Nos. 16-1476, -1514, -1515

## CERTIFICATE OF INTEREST

Counsel for the Defendants-Appellees HTC Corporation and HTC America, Inc. certifies the following:

1.     The full name of every party or amicus represented by me is:

HTC Corporation and HTC America, Inc.

2.     The name of the real party in interest (if the party name in the caption is not the real party in interest) represented by me is:

N/A.

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

HTC Corporation is a Taiwan corporation and is a publicly traded company in Taiwan, R.O.C., and

HTC America, Inc. is a Washington corporation and is a wholly owned, indirect subsidiary of HTC Corporation.

4.    The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this Court are:

Cooley LLP:  Johnathan Paul Bach, Heidi Lyn Keefe, Kyle D. Chen, Lam Khanh Nguyen, Mark Randolph Weinstein, Neil Nalin Desai, Reuben Ho-Yen Chen, Stephen A. Wieder;

Perkins Coie LLP:  John Dudley Esterhay, John P. Schnurer, Tawen Chang.

Dated:  May 19, 2016

COOLEY LLP

HEIDI L. KEEFE
MARK R. WEINSTEIN
KYLE D. CHEN

By:  */s/ Kyle D. Chen*
                    Kyle D. Chen

*Attorneys for Defendants – Appellees*
*HTC CORPORATION and*
*HTC AMERICA, INC.*

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

ADVANCED VIDEO TECHNOLOGIES, LLC,

v.

HTC CORPORATION, HTC AMERICA, INC., BLACKBERRY LTD.,
BLACKBERRY CORPORATION, MOTOROLA MOBILITY, LLC, aka
Motorola Mobility, Inc.,

Nos. 16-1476, -1514, -1515

## CERTIFICATE OF INTEREST

Counsel for the Appellees BlackBerry Ltd. and BlackBerry Corporation certifies the following:

1.     The full name of every party or amicus represented by me is:

BlackBerry Ltd. and BlackBerry Corporation

2.     The name of the real party in interest (if the party name in the caption is not the real party in interest) represented by me is:

N/A

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

N/A

4.     The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this Court are:

Venable LLP, William D. Coston, Jeffri A. Kaminski, Christopher T. la Testa, Todd M. Nosher, Joeann Walker

Dated:  May 19, 2016                    VENABLE LLP

                                        WILLIAM D. COSTON
                                        JEFFRI A. KAMINSKI
                                        CHRISTOPHER T. LA TESTA

                                        By:  */s/ Christopher T. La Testa*
                                                Christopher T. La Testa

                                        *Attorneys for Defendants – Appellees*
                                        *BLACKBERRY LTD. and*
                                        *BLACKBERRY CORPORATION*

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

ADVANCED VIDEO TECHNOLOGIES, LLC,

v.

HTC CORPORATION, HTC AMERICA, INC., BLACKBERRY LTD,
BLACKBERRY CORPORATION, MOTOROLA MOBILITY, LLC, aka
Motorola Mobility, Inc.,

Nos. 16-1476, -1514, -1515

## <u>CERTIFICATE OF INTEREST</u>

Counsel for the Appellee Motorola Mobility LLC certifies the following:

1.     The full name of every party or amicus represented by me is:

Motorola Mobility LLC.

2.     The name of the real party in interest (if the party name in the caption
is not the real party in interest) represented by me is:

N/A.

3.     All parent corporations and any publicly held companies that own 10
percent or more of the stock of the party or amicus curiae represented by me are:

Motorola Mobility LLC is a wholly-owned subsidiary of Motorola Mobility

Holdings LLC, which is a wholly-owned subsidiary of Motorola Mobility

Global Holdings Limited, which is a wholly-owned subsidiary of Lenovo

Group Limited.

4.    The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this Court are:

Kilpatrick Townsend & Stockton LLP, Frederick L. Whitmer, Steven D. Moore, D. Clay Holloway, and Akarsh P. Belagodu

Dated:  May 19, 2016

KILPATRICK TOWNSEND &
STOCKTON LLP

FREDERICK L. WHITMER
STEVEN D. MOORE
D. CLAY HOLLOWAY
AKARSH P. BELAGODU

By:  */s/ D. Clay Holloway*
          D. Clay Holloway

*Attorneys for Defendant – Appellee*
*MOTOROLA MOBILITY LLC*

# TABLE OF CONTENTS

*Page*

CERTIFICATE OF INTEREST FOR HTC CORPORATION AND HTC AMERICA, INC. ..................................................................................i

CERTIFICATE OF INTEREST FOR BLACKBERRY LTD. AND BLACKBERRY CORPORATION ............................................................ iii

CERTIFICATE OF INTEREST FOR MOTOROLA MOBILITY LLC ................v

TABLE OF CONTENTS .................................................................. vii

TABLE OF AUTHORITIES ................................................................ix

STATEMENT OF RELATED CASES ..................................................1

STATEMENT OF THE ISSUES ..........................................................2

STATEMENT OF THE CASE ............................................................3

COUNTER-STATEMENT OF THE FACTS ..........................................6

    I.     The '788 Patent and Its Broken Chain of Title ....................................6

    II.    The Motion To Dismiss ..............................................................9

    III.   The District Court's Exceptionality Finding ....................................11

    IV.   The District Court's Fees Awards ................................................13

SUMMARY OF ARGUMENT ..........................................................16

ARGUMENT .................................................................................18

    I.     Standard of Review ..................................................................18

    II.    AVT's Prevailing Party Argument Is Waived and Without Merit. ..............................................................................................19

        A.    AVT Waived Its "Prevailing Party" Argument. ......................19

        B.    Appellees Are the Prevailing Parties by Eliminating AVT's Rights To Sue Them and by Significantly Reducing Potential Damages. ................................................20

    III.   The District Court Did Not Abuse Its Discretion in Finding that This Suit Is Exceptional. ..................................................26

A.  AVT's Prior Chain-of-Title Theory Based on the Non-Existent Merger Between Epogy and AVC Was Frivolous. .................................................................28

B.  AVT's Newly Invented Chain-of-Title Theory in Opposing Appellees' Motion To Dismiss Was Also Baseless. ..............................................................30

C.  AVT's Reliance on Epogy's Representations and Warranties Was Unreasonable Because AVT Had Good Reasons To and Actually Did Doubt Their Reliability. ..........33

D.  The Fact that the USPTO and the Other Third Parties Never Challenged AVT's Alleged Title Does Not Support AVT's Purported Reasonableness. ...........................34

E.  AVT Interfered with Appellees' Investigation of the Title Issue by Asserting Baseless Privilege Claims. ........................36

F.  AVT's Shifting Legal Positions Confirmed that AVT Never Had Any Reasonable Basis To File or Maintain Suit. ...................................................................37

G.  Considerations of Compensation and Deterrence Favor Sanctions. ................................................................39

H.  The Cases Cited by AVT Do Not Diminish Its Objective Unreasonableness in Filing and Maintaining Suit. .................41

IV.  The District Court Did Not Abuse Its Discretion in Determining the Fees Amounts. ...............................................................44

A.  The Awarded Fees Amounts Are Reasonable Because Appellees Obtained Significant Success in Getting This Suit Dismissed. .......................................................44

B.  Only Fees Incurred for Work Not Transferrable to the New Cases Have Been Awarded. ..........................................46

C.  The Issues Involved Were Numerous and Complicated, so the Fees Amounts Awarded Are More than Reasonable After the District Court Applied Significant Discounts. ................................................................47

CONCLUSION AND STATEMENT OF RELIEF SOUGHT .................51

CERTIFICATE OF SERVICE .......................................................53

CERTIFICATE OF COMPLIANCE................................................55

# TABLE OF AUTHORITIES

*Page(s)*

## CASES

*Abbott Point of Care, Inc. v. Epocal, Inc.*,
666 F.3d 1299 (Fed. Cir. 2012) ........................................................................36

*Advanced Video Techs. LLC v. HTC Corp.*,
Nos. 11 Civ. 6604(CM), etc., 2013 WL 6017923 (S.D.N.Y.
Nov. 7, 2013) .......................................................................................................22

*Advanced Video Techs., LLC v. HTC Corp.*,
103 F. Supp. 3d 409 (S.D.N.Y. 2015) ........................................................*passim*

*Advanced Video Techs., LLC v. HTC Corp.*,
No. 1:11 Civ. 08908 (CM), 2015 WL 7621483 (S.D.N.Y. Aug. 28,
2015) .............................................................................................................*passim*

*Askins v. Doe*,
727 F.3d 248 (2d Cir. 2013) .......................................................................19, 49

*British Caledonian Airways, Ltd. v. First State Bank of Bedford, TX*,
819 F.2d 593 (5th Cir. 1987) ..............................................................................43

*DCA Food Indus., Inc. v. Tasty Foods, Inc.*,
626 F. Supp. 54 (W.D. Wis. 1985) ..................................................................... 43

*Durfee v. Duke*,
375 U.S. 106 (1963)..............................................................................................21

*Fromson v. United States*,
32 Fed. Cl. 1 (Fed. Cl. 1994) .............................................................................. 43

*Gaymar Indus., Inc. v. Cincinnati Sub-Zero Prods., Inc.*,
790 F.3d 1369 (Fed. Cir. 2015) ..........................................................................27

*Golden Bridge Tech. v. Nokia, Inc.*,
527 F.3d 1318 (Fed. Cir. 2008) ...................................................................19, 49

*Highmark Inc. v. Allcare Health Mgmt. Sys.*,
134 S. Ct. 1744 (2014).........................................................................................18

*Highway Equip. Co. v. FECO, Ltd.*,
  469 F.3d 1027 (Fed. Cir. 2006) .........................................................19

*Inland Steel Co. v. LTV Steel Co.*,
  364 F.3d 1318 (Fed. Cir. 2004) .........................................................20

*Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*,
  456 U.S. 694 (1982)...........................................................................21

*March Madness Athletic Ass'n v. Netfire, Inc.*,
  310 F. Supp. 2d 786 (N.D. Tex. 2003) ............................................... 43

*Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*,
  726 F.3d 1359 (Fed. Cir. 2013) .........................................................18

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
  134 S. Ct. 1749 (2014)................................................................*passim*

*Orbit Irrigation Prods., Inc. v. Sunhills Int'l, LLC*,
  No. 1:10-CV-113 TS, 2015 WL 7574766 (D. Utah Nov. 25, 2015)............41, 42

*Rice Servs., Ltd. v. United States*,
  405 F.3d 1017 (Fed. Cir. 2005) .........................................................25

*Sage Prods., Inc. v. Devon Indus., Inc.*,
  126 F.3d 1420 (Fed. Cir. 1997) ...................................................19, 49

*SFA Sys., LLC v. Newegg Inc.*,
  793 F.3d 1344 (Fed. Cir. 2015) .........................................................18

*Singleton v. Wulff*,
  428 U.S. 106 (1976)......................................................................19, 49

*Sweepstakes Patent Co. v. Chase Burns*,
  No. 6:14-cv-151-Orl-22KRS, 2015 U.S. Dist. LEXIS 175691
  (M.D. Fla. Nov. 24, 2015) ........................................................... 25, 26

*Sweepstakes Patent Co. v. Chase Burns*,
  No. 6:14-cv-151-Orl-22KRS, 2016 WL 386060 (M.D. Fla. Feb. 2,
  2016) ..................................................................................................26

*TriReme Med., LLC v. AngioScore, Inc.*,
   No. 3:14-cv-02946-LB, 2015 WL 3463500 (N.D. Cal. May 28,
   2015) ................................................................................................41

*TrueBlue, Inc. v. Leeds Equity Partners IV, LP*,
   No. N14C-12-112 WCC CCLD, 2015 WL 5968726 (Del. Super.
   Sept. 25, 2015) ................................................................................10

## STATUTES

28 U.S.C. § 1927 ..........................................................................4, 46, 49

35 U.S.C. § 285 ................................................................................*passim*

35 U.S.C. § 286 ..............................................................23, 24, 25, 26

## RULES

Federal Circuit Rule 47.5(a) ...................................................................1

Federal Circuit Rule 47.5(b) ...................................................................1

Federal Rule of Civil Procedure 11 ......................................4, 40, 46, 49

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5(a), Defendants-Appellees HTC Corporation and HTC America, Inc. ("HTC"), BlackBerry Ltd. and BlackBerry Corporation ("BlackBerry"), and Motorola Mobility LLC ("Motorola") (collectively "Appellees") state that they are unaware of any other appeal to this Court or to any other Court of Appeals from the present suit that encompasses these appeals (Case Nos. 16-1476, -1514, -1515) (collectively "this suit," "this lawsuit," or "the present suit").

Pursuant to Federal Circuit Rule 47.5(b), Appellees state that they are unaware of any other pending appeal before this Court that may directly affect or may be directly affected by this Court's decisions in these appeals (Case Nos. 16-1476, -1514, -1515).

## <u>STATEMENT OF THE ISSUES</u>

1.    Did the district court abuse its discretion in finding this suit "exceptional" and thus warranting the awards of attorneys' fees?

2.    Did the district court abuse its discretion in setting the amounts of the attorneys' fees that it awarded?

## STATEMENT OF THE CASE

Plaintiff-Appellant Advanced Video Technologies LLC's ("AVT" or "Appellant") filed patent actions during 2011 and 2012 against Appellees in the Southern District of New York, accusing them of infringing U.S. Patent No. 5,781,788 (the "'788 patent" or the "patent-in-suit"). (A160 at Dkt. No. 1; A1535 at Dkt. No. 1; A2592 at Dkt. No. 1.) Towards the end of discovery, which did not begin until February 2014, documentary and testimonial evidence revealed serious defects in AVT's purported chain of title, and thus, confirmed AVT's lack of standing to sue for infringement of the '788 patent. (A12; A73.)

Appellees moved to dismiss for lack of standing, which the district court granted in April 2015. *See Advanced Video Techs., LLC v. HTC Corp.*, 103 F. Supp. 3d 409 (S.D.N.Y. 2015) (same as A3-27) ("Dismissal Order"). Although Appellees identified three separate standing defects, the district court found one of them dispositive and thus did not address the other two. *Id.* at 417-418. In particular, the district court noted that AVT's purported chain of title included a prior patent assignment to a Mr. J. Nicholas Gross from Epogy Communications, Inc. ("Epogy") – which in turn allegedly obtained the patent rights from the original assignee, AVC Technology, Inc. ("AVC"). *Id.* at 415. But as the district court found, Epogy never obtained any patent rights from AVC, so had nothing to assign to Mr. Gross. *Id.* at 423. Therefore, AVT (whose alleged rights entirely

depended on Mr. Gross's assignment) was a complete stranger to the patent and had no title whatsoever, and thus lacked standing. *Id.* AVT did not appeal the Dismissal Order, and the time for doing so has long passed.

Following the Dismissal Order, Appellees moved for sanctions under Federal Rule of Civil Procedure 11, 35 U.S.C. § 285, and 28 U.S.C. § 1927. (A182 at Dkt. Nos. 167 and 169; A1552 at Dkt. Nos. 114-115; A2609-610 at Dkt. Nos. 129 and 131.) The district court granted relief only under 35 U.S.C. § 285, finding the present suit "exceptional" and awarding Appellees their attorneys' fees relating to the motion to dismiss and the successful portions of the motion for sanctions under 35 U.S.C. § 285. *See Advanced Video Techs. LLC v. HTC Corp.*, No. 1:11 Civ. 08908 (CM), 2015 WL 7621483 (S.D.N.Y. Aug. 28, 2015) (same as A69-85) ("Sanctions Order"). The district court found this suit "exceptional" because "AVT's proof of title to patent '788 was exactly nil" (A79) and because "AVT's principals … were aware, virtually from the moment the company came into existence that they could not trace AVT's chain of title back to an entity that had clear title to the patent" (A71), among other things.

AVT now seeks relief from the district court's assessment that AVT needs to reimburse Appellees a portion of the many millions spent in defending this frivolous lawsuit – a suit where AVT took a "head-in-the-sand approach to recognized title defects" (A76). The district court's decision in finding this suit

exceptional and awarding fees is not an abuse of discretion. To the contrary, the court applied the correct legal standard to its accurate factual findings and properly exercised its discretion to award some, but not all, of the fees sought.

After receiving and considering further briefing from the parties on the amount of the fees, the district court entered judgment for HTC, awarding $502,068.86 (A190 at Dkt. No. 221; A38-39), for BlackBerry, awarding $84,000.00 (A1-2), and for Motorola, awarding $81,065.22 (A94-95). AVT's appeals of these awards followed.

## COUNTER-STATEMENT OF THE FACTS

### I.    THE '788 PATENT AND ITS BROKEN CHAIN OF TITLE

The '788 patent issued on July 14, 1998 and listed AVC Technology, Inc. ("AVC") as the original assignee.  (A202.)  Appellant AVT's claim of ownership to the '788 patent entirely depended on a chain of three purported transfers:  **(1)** a transfer from AVC (the original assignee) to Epogy Communications, Inc. ("Epogy"); **(2)** an assignment from Epogy to an individual, Mr. J. Nicolas Gross, who later became a principal and 50% owner of AVT (A661; A71); and **(3)** an assignment from Mr. Gross to Appellant AVT.  But as the district court found, this chain of title collapsed because the first supposed transfer from AVC to Epogy never took place.  Dismissal Order, 103 F. Supp. 3d at 422-424.  As such, no rights to the '788 patent were ever transferred from AVC to Epogy.  (*Id.* at 423.) Because Epogy in turn had no rights to the '788 patent, it could not have assigned any such rights to Mr. Gross, and thus, he had nothing to assign to AVT.  (*Id.*)

Internal emails and communications confirmed that AVT knew, years before the litigation, that it had no documentation to prove any transfer of the '788 patent from AVC to Epogy.  *See* Sanctions Order, 2015 WL 7621483, at *2.  AVT attempted to conceal these emails through a baseless privilege objection until the

magistrate judge ordered AVT to produce them.[1]  *See id.* at *4.  Those materials not only confirmed the absence of any documentation supporting a transfer from AVC to Epogy, but also revealed that AVT's principals entertained serious doubts as to whether such a transfer could be established.  *See id.* at *2.  As the district court found, AVT's principals (Gross (50% owner) and GPC (manager)) "were aware, virtually from the moment [AVT] came into existence, that they could not trace AVT's chain of title back to an entity that had clear title to the patent – a corporation known as AVC."  *See id.* at *2; *see also* A71; A653 ("General Patent Corporation International[, *i.e.*, GPC], is hereby designated as the Manager[ of AVT] for an unlimited term."); A661.  The district court cited a May 8, 2003 email exchange (A536, A538) between Mr. Neil Cohen, GPC's General Counsel who also served as AVT's in house counsel at the time, and Mr. Gross.  Sanctions Order, 2015 WL 7621483, at *2.  That email exchange read as follows:

> "Nick,
>
> Is there any additional documentation that shows that the AVC/Epogy deal closed and that Epogy actually acquired the patent?
>
> Neil Cohen

Gross responded[ the same day]:

---

[1] AVT did not appeal the magistrate judge's order to the district judge.

Hi Neil,

Epogy was a private company, so they solicited the votes of the shareholders; these were tallied and the deal went through.

They did not 'record' this event on their records, as they were pretty small. The only documentation would be hundreds of letters 'agreeing' to the merger, and then you'd have to know how many shares were involved, etc., etc.

Not an easy task.

If I can think of another way to 'prove' this, I will, but as AVC does not exist anymore, I'm not sure of the options.

If you have ideas, let me know.

NICK G"

Sanctions Order, 2015 WL 7621483, at *2-3 (quoting A536, A538).

The district court further found that "Gross actually overstated his knowledge in his email to Cohen; in fact, he has absolutely no idea whether any 'letters' consenting to the merger were ever sent to Epogy's or AVC's shareholders." Sanctions Order, 2015 WL 7621483, at *3 (citing A545 (Gross 4/2/15 Depo. Tr.) at 302:11-18). "Gross also 'didn't have a clue' whether any short-form merger between the two corporations ever took place." Id. (citing A554 (Gross 10/22/14 Depo. Tr.) at 171:15-19) (internal brackets omitted).

Ignoring these longstanding chain-of-title problems, AVT filed suit. Each of the complaints filed against Appellees recited the identical false allegation that

"[t]he owner of the '788 Patent, by assignment, is AVT, who has the right to sue and recover damages for infringement thereof."  (A196, ¶ 10 (HTC); A1563, ¶ 10 (BlackBerry); A2621, ¶ 9 (Motorola).)

## II.    THE MOTION TO DISMISS

In November 2014, before filing their motion to dismiss, Appellees gave AVT an opportunity to voluntarily dismiss the lawsuit based on AVT's lack of standing.  Sanctions Order, 2015 WL 7621483, at *4; *see also* A73, A571-576. Appellee's letter pointed out that, among other things, AVT had not produced any evidence of any merger between Epogy and AVC, nor any other evidence showing a transfer of the '788 patent from AVC to Epogy.  (A574.)  AVT refused to dismiss the suit (A587-589), resulting in the motion to dismiss.  Sanctions Order, 2015 WL 7621483, at *4; *see also* A73.

The briefing on the motion confirmed that AVT had no reasonable basis to believe it had standing to sue.  As the district court observed, "AVT's theory of how Epogy came to acquire AVC's rights in the patent in suit ha[d] shifted over time."  Dismissal Order, 103 F. Supp. 3d at 418.  "At first, AVT claimed that the patent rights were transferred when AVC was merged into Epogy in a short-form statutory merger.  AVT now concedes that no such merger ever took place."  *Id.* at 419.  AVT then characterized its long-held merger theory as a mere "fallback" (A3474), and relied on the legally specious assertion that Epogy took title to

AVC's assets because it allegedly acquired 100% of AVC's stock. *See* Dismissal Order, 103 F. Supp. 3d at 419.

The district court correctly found this theory to be entirely lacking in merit. *See id.* at 419-422. AVT's theory ignored elementary principles of corporate law by incorrectly assuming that ownership of a company's stock was equivalent to holding legal title to its underlying assets. *See id.* The district court noted that "AVT cite[d] no authority for this assertion,[2] and understandably so, because Epogy did not acquire any of AVC's assets simply by purchasing 100% of its stock." *Id.* at 419. "That is a well-settled proposition of corporate law in both Delaware (where AVC [w]as incorporated) and California (where Epogy was incorporated)." *Id.*

Accordingly, in April 2015, the district court granted the motion to dismiss and entered judgment in favor of Appellees. *See id.* at 418; *see also* A28-29. AVT never appealed the dismissal to this Court, which is now final. (A73.)

---

[2] AVT cites *TrueBlue* for the first time on appeal to argue that "an acquisition of one corporation by another may very well result in the transfer of all corporate assets to the *surviving* corporation[,]" which points to a merger. (AVT Br. at 23 (emphasis added) (citing *TrueBlue, Inc. v. Leeds Equity Partners IV, LP*, No. N14C-12-112 WCC CCLD, 2015 WL 5968726, at *3 (Del. Super. Sept. 25, 2015)).) But neither AVT's new argument nor the *TrueBlue* case supports AVT's baseless position presented below (*i.e.*, Epogy's purported 100% purchase of AVC's stock transferred AVC's assets, including the '788 patent, to Epogy) or makes it any less frivolous. (A3477.)

-10-

### III.    THE DISTRICT COURT'S EXCEPTIONALITY FINDING

On August 28, 2015, the district court granted Appellees' motion for recovery of attorneys' fees under 35 U.S.C. § 285. Sanctions Order, 2015 WL 7621483. In finding this suit "exceptional," the district court provided a lengthy and detailed analysis of the facts underlying AVT's objective unreasonableness. *See id.* at *1-3, *6-9. The district court pointed out that AVT entertained serious reservations about whether it had title since 2003 and yet failed to take the most basic steps to confirm whether an AVC-to-Epogy transfer had taken place. *Id.* "Knowing that it could not prove good title rendered any reliance by AVT on the beliefs or the statements of AVC and Epogy *objectively* unreasonable – even if Gross and Cohen actually (i.e., <u>subjectively</u>) believed that AVT had title." *Id.* at *8 (italics in original; underlining added). As the district court explained:

> To be perfectly frank, the only conclusion that can reasonably be drawn from everything that happened between May 2003 and November 2014 is that sometimes bluffing is a perfectly reasonable business decision. Bluffing is what AVT did: it bluffed by confidently asserting that it owned the patent, knowing that no one was likely to call its bluff and force it to prove what it knew it could not really prove. That cannot be equated with having an objectively reasonable belief that there was no defect in AVT's title to the '788 patent.

*Id.* The district court further observed that "[t]he objective unreasonableness of the steps taken by AVT is underscored by the fact that the arguments propounded by AVT in opposing the motions to dismiss were exceptionally weak, as can be fairly

inferred from the Opinion dismissing the cases." *Id.* at *9. The district court

explained that "AVT's proof of title to patent '788 was exactly nil" and that "[i]ts

arguments were all about wishes and hopes – not proof." *Id.*

Finally, the district court cited "considerations of compensation and

deterrence" in finding the case exceptional and choosing to award fees. *Id.* The

district court reasoned:

> This case involves a PAE [*i.e.*, a 'patent assertion entity'] that
> has but one purpose: prosecuting the patent-in-suit. Without
> title to that patent, it could not do the *one thing* it was created to
> do. AVT is correct that losing a patent infringement case
> without more does not warrant sanctions under § 285, but AVT
> didn't just lose; it had no right to bring the case in the first place.
> This sanction will thus serve as a deterrent to other PAEs who
> might prefer to ignore doubts about their title, warning them to
> make sure they own the patent before initiating suit. AVT had
> questions about its title but buried its head in the ground, and
> failed to conduct a reasonable investigation before initiating
> lawsuit after lawsuit. I cannot imagine that Congress would not
> have envisioned such a scenario as 'exceptional' under § 285.

*Id.* (italics in original).

The district court accordingly granted Appellee's motion for attorneys' fees

under § 285, and ordered them to submit further documentation detailing the fees

incurred in connection with the entire litigation on the title issue and the successful

portions of the sanctions motions. *Id.* at *14.

## IV.   THE DISTRICT COURT'S FEES AWARDS

In accordance with the district court's order, Appellees submitted documentation in support of the amounts of fees claimed based on the scope of the district court's fees awards.  (A188-190 at Dkt. Nos. 204-220; A1556-558 at Dkt. Nos. 146-159; A2614-615 at Dkt. Nos. 156-169.)   In response, AVT filed a "Memorandum of Law" (A189 at Dkt. No. 209), which turned out to be "essentially an untimely motion for reconsideration of the [district] court's August 28 order[ granting sanctions under 35 U.S.C. § 285]."  (A30.)   The district court held that it "c[ould] ignore AVT's arguments simply because they [we]re untimely, but [it] also reject[ed] them on the merits … because [it was] firmly convinced that awarding sanctions was the right thing to do."  (A31.)   While declining actual reconsideration, the district court indicated the following:

> Were I to reconsider anything, it would be the finding that AVT did not bring these and other infringement actions 'knowing' that it did not own the patent; as I re-read the August 28 decision, I find the argument that *its principals are guilty of, at a minimum, conscious avoidance on that score more persuasive than I did the first time around.*

(*Id.*; *cf.* Sanctions Order, 2015 WL 7621483, at *6 ("AVT … perhaps even consciously avoided taking those steps [to confirm its mistaken belief that it held title].")); *see also* A75.)

The district court then granted attorneys' fees and entered judgment for HTC in the amount of $502,068.86 (A32; A38-39), BlackBerry $84,000 (A1-2), and

Motorola $81,065.22 (A94-95). In doing so, the district court found that "HTC['s] attorneys, the law firm of Cooley, served as 'lead counsel' throughout this consolidated matter and did the lion's share of the work on the motion to dismiss for lack of subject matter jurisdiction." (A31.) In particular, the district court acknowledged "that a huge amount of time was needed to unravel this particular Gordian Knot[.]" (*Id.*)

But the district court was mindful that "[t]he fee request is large [also] in part because of the number of professionals who worked on the ownership/standing assignment[, so] some duplication of work is inevitable[.]" (A32.) The district court specifically noted that it "do[es] not suggest that this is unreasonable" and recognized that "many different people end up making meaningful contributions to the finished product." (*Id.*) But to address this issue, the district court applied "a 20% discount (over and above the 12% already worked into the bill sent to the client) to the billable hours fees requested by HTC[, which] effectively takes one-third off the full value of Cooley attorneys' billable hours [of $810,072]." (*Id.*; A31.) The district court also excluded "fees attributable to the work of nonlawyers" as well as all of the "costs" items, which had been referred to the magistrate judge. (A32-33.) In sum, "HTC's request for reimbursement of attorneys' fees is allowed in the sum of $502,068.86." (*Id.* at 32.)

With respect to Motorola and BlackBerry, the district court observed that "AVT also sued them under what turned out to be false pretenses, and while HTC's counsel took the lead on the ownership/jurisdiction issue, the lawyers for Blackberry and Motorola were independently responsible to protect the interests of their clients." (A33.)  The district court applied similar discounts to Motorola's claimed fees and awarded $81,065.22. (A33-34; A94-95.)  As to BlackBerry, the district court requested additional information from BlackBerry's counsel (Venable LLP) regarding its professional fees (under a special fixed-fee arrangement) rendered for compensable matters under the Sanctions Order. (A34-37.)  The district court thereafter reviewed the additional information, including fully itemized billing records provided by BlackBerry's counsel, and awarded $84,000. (*Id.*; A1-2).

The district court noted that while HTC took the laboring oar, the court was not suggesting that counsel for Motorola and BlackBerry did not add value. (A37.) To the contrary, the district court acknowledged that the matter had been a group effort and commended counsel on "figur[ing] out a way to keep costs down." (*Id.*)

## SUMMARY OF ARGUMENT

The district court's order should be affirmed in all respects.

AVT's primary argument is that Appellees are not the "prevailing parties" to the district court litigation under 35 U.S.C. § 285. But AVT waived this argument by failing to raise it during the district court proceedings. And even if this Court considers the argument, it fails for want of merit. Appellees prevailed in this suit by securing the Dismissal Order that established conclusively that AVT had no rights over the '788 patent whatsoever. It is hard to imagine an order that more drastically alters the legal relationship between Appellees and AVT than the Dismissal Order, which completely stripped AVT of its previously-claimed power to sue. As the district court observed, "AVT didn't just lose; it had no right to bring the case in the first place." Sanctions Order, 2015 WL 7621483, at *9. The Dismissal Order also wiped away years of past damages, rendering certain accused products entirely outside the scope of any claims under the '788 patent. Appellees were thus the "prevailing parties" to the district-court actions under 35 U.S.C. § 285.

AVT has also failed to show any abuse of discretion in the district court's exhaustive and detailed "exceptional case" analysis. The district court's order was based on a painstaking review of the evidentiary record underlying the purported AVC-to-Epogy transfer, among other things. Like their counterpart presented to

the district court, AVT's appellate arguments confuse and conflate "subjective belief" with "objective reasonableness," which the district court properly rejected. The district court did not clearly err or abuse its discretion in observing that AVT had actual knowledge of defects in its chain of title before filing suit (as confirmed by AVT's own documents), or that AVT's arguments against dismissal were objectively baseless – a fact supported by AVT's decision not to appeal the Dismissal Order.  AVT may not agree with the district court's findings, but AVT has come nowhere close to showing any clear error or abuse of discretion.

Finally, the district court did not abuse its discretion in setting the amounts of the attorneys' fees awarded.  The district court limited the awards to only fees related to the entire ownership-related litigation and the successful portions of the sanctions motion.  The district court correctly noted that the ownership-related issue was factually complex, and required a tremendous amount of work to unravel, even for the district court, which referred to the issue as a "Gordian Knot." The district court nevertheless applied heavy discounts to the awarded fees.  AVT has not shown any abuse of discretion in the amounts of the fees awarded by the district court.

In sum, the district court's awards should be affirmed in their entirety.

# ARGUMENT

## I.   STANDARD OF REVIEW

"[T]he determination whether a case is 'exceptional' under § 285 is a matter of discretion." *Highmark Inc. v. Allcare Health Mgmt. Sys.*, 134 S. Ct. 1744, 1748 (2014).  Thus, "the exceptional-case determination is to be reviewed only for abuse of discretion." *Id.*  "The decision to award attorney fees, as well as the amount of fees, is reviewed under an abuse of discretion standard." *Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*, 726 F.3d 1359, 1365 (Fed. Cir. 2013).

"The abuse-of-discretion standard does not preclude an appellate court's correction of a district court's legal or factual error: 'A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence.'" *Highmark*, 134 S. Ct. at 1748 n.6 (citation omitted).  But this "does not mean that [the appellate court] must evaluate and determine all issues of law decided by the district court de novo as part of [the] review of the district court's exceptional case determination." *SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1348 (Fed. Cir. 2015).  Instead, the district court's determination on "the *substantive strength* of a party's litigating position (considering both the *governing law* and the facts of the case) or the unreasonable manner in which the case was litigated … is to be reviewed on appeal for abuse of discretion." *Highmark*, 134 S. Ct. at 1748 (emphasis added);

*see also id.* at 1749 ("We therefore hold that an appellate court should apply an abuse-of-discretion standard in reviewing all aspects of a district court's §285 determination."). Factual findings by the district court in connection with a fees award are reviewed for clear error. *Highway Equip. Co. v. FECO, Ltd.*, 469 F.3d 1027, 1032 (Fed. Cir. 2006).

## II.    AVT'S PREVAILING-PARTY ARGUMENT IS WAIVED AND WITHOUT MERIT.

### A.    AVT Waived Its "Prevailing Party" Argument.

AVT argues for the first time in its opening brief that Appellees were not prevailing parties under 35 U.S.C. § 285. (Brief for Plaintiff-Appellant Advanced Video Technologies, LLC (hereinafter "AVT Br.") at 12-15.) AVT never made this argument in the district court. This Court should therefore decline to consider this new argument. *See Singleton v. Wulff*, 428 U.S. 106, 120 (1976) ("It is the general rule … that a federal appellate court does not consider an issue not passed upon below."); *Golden Bridge Tech. v. Nokia, Inc.*, 527 F.3d 1318, 1322 (Fed. Cir. 2008) ("Our precedent generally counsels against entertaining arguments not presented to the district court.") (citing cases); *see also Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1426 (Fed. Cir. 1997) ("In short, this court does not 'review' that which was not presented to the district court."); *see also Askins v. Doe*, 727 F.3d 248, 252 (2d Cir. 2013) ("[I]t is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal.").

AVT had ample opportunities to argue the "prevailing party" issue before the district court but never did.  For instance, AVT did not dispute Appellees' prevailing party status when it opposed Appellees' motion for sanctions under § 285.  AVT again failed to raise this issue when it objected to the amounts of the fees claimed by the Appellees, notwithstanding that AVT made various other substantive arguments challenging the district court's earlier Sanctions Order.  (*See* A30-31 (the district court recognized that AVT's "Memorandum of Law" objecting to Appellees' claimed fees was "essentially an untimely motion for reconsideration of the court's August 28 order" awarding sanctions).)

AVT has not identified any circumstances that would justify considering its "prevailing party" argument for the first time on appeal.  This Court should therefore decline to consider this argument.

### B.    Appellees Are the Prevailing Parties by Eliminating AVT's Rights To Sue Them and by Significantly Reducing Potential Damages.

AVT's untimely prevailing-party argument also fails for substantive reasons. A party qualifies as a "prevailing party" if it receives "at least some relief on the merits, which alters … the legal relationship of the parties." *Inland Steel Co. v. LTV Steel Co.*, 364 F.3d 1318, 1320 (Fed. Cir. 2004) (internal citations and quotations omitted).  Appellees squarely meet this definition for at least two separate reasons.

First, Appellees prevailed on the merits of a standing defense that challenged AVT's right to sue and collect damages under the '788 patent. By finding that AVT had no ownership interest in the '788 patent, the Dismissal Order altered the legal relationship between AVT and Appellees by stripping AVT of its previously claimed right to assert the '788 patent against Appellees. It is hard to imagine a more dramatic alteration in the legal relationship between AVT and Appellees than the one resulting from the Dismissal Order.

AVT's arguments reflect a misunderstanding of the "prevailing party" standard. The district court's dismissal was not based on some kind of procedural defect, such as improper service or venue, which would have left AVT free to refile suit. The district court's finding that AVT held no ownership interest in the '788 patent and thus lacked standing to sue carries res judicata and collateral estoppel effects in subsequent litigation. *See, e.g.*, *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 n.9 (1982) ("It has long been the rule that principles of res judicata apply to jurisdictional determinations – both subject matter and personal."); *Durfee v. Duke*, 375 U.S. 106, 112 (1963) ("[S]ince the question of subject-matter jurisdiction had been fully litigated in the original forum, the issue could not be retried in a subsequent action between the parties.") (citing cases).

In other words, the Dismissal Order was a substantive ruling that AVT's alleged chain of title was insufficient to confer any interest in the '788 patent, which *eviscerated* AVT's previously claimed right to sue Appellees altogether. Had AVT refiled its infringement suit against Appellees based on the same chain-of-title record, the new suit would have been subject to immediate dismissal based on res judicata and collateral estoppel grounds.

The fact that the district court never issued merits rulings on non-infringement or invalidity does not change the analysis. [3] The Dismissal Order stripped AVT of its claimed power to assert the '788 patent against Appellees altogether, a change in their legal relationship even more dramatic than any ruling on non-infringement or invalidity on certain claims. As the district court observed, "AVT didn't just lose; it had no right to bring the case in the first place." Sanctions Order, 2015 WL 7621483, at *9. There is simply no question that the

---

[3] AVT's argument that it "prevailed" in Appellees' joint motion for summary judgment for invalidity has no merit. The district court's summary judgment order did not affirmatively find the '788 patent to be valid; it merely found that genuine issues of material fact precluded summary judgment. *See Advanced Video Techs. LLC v. HTC Corp.*, Nos. 11 Civ. 6604(CM), etc., 2013 WL 6017923, at *9 (S.D.N.Y. Nov. 7, 2013). For this reason, the district court in the Sanctions Order characterized the summary judgment motion as "premature." Sanctions Order, 2015 WL 7621483, at *4; *see also* A73.

Dismissal Order, which was not appealed and is now final, fundamentally altered the legal relationship between AVT and Appellees.

This change in legal relationship is further confirmed by AVT's subsequent conduct. After the Dismissal Order, AVT took several steps in an attempt to cure the defects in its chain of title, including applying in the Delaware Court of Chancery for the appointment of a Receiver for the long-dissolved AVC to obtain a purported assignment to AVT.[4] *See* Sanctions Order, 2015 WL 7621483, at *4. None of these efforts would have been necessary if, as AVT now suggests for the first time, the Dismissal Order did not affect the parties' prior legal relationship.

The second reason Appellees are the prevailing parties is because the Dismissal Order dramatically reduced the potential damages that AVT could seek under the '788 patent. Under 35 U.S.C. § 286, "no recovery shall be had for any infringement committed more than six years prior to the filing of the complaint or counterclaim for infringement in the action." 35 U.S.C. § 286. AVT's original

---

[4] Appellees do not concede that AVT's subsequent efforts were successful in curing AVT's defective standing. As the district court acknowledged, Appellees also argued that AVT lacked standing because neither AVT nor any of its predecessors-in-interest ever acquired the original part-ownership belonging to one of the three named inventors, Ms. Vivian Hsiun. Dismissal Order, 103 F. Supp. 3d at 412-414, 417. The district court did not reach the merits on those related issues because the AVC-Epogy transfer issue was already dispositive. *Id.* at 417-418. Those additional standing defects are the subject of a pending joint motion to dismiss in AVT's new cases.

infringement actions against Appellees were brought in September 2011 (against HTC), December 2011 (against BlackBerry), and February 2012 (against Motorola).  (A150 (HTC); A1561 (BlackBerry); A2619 (Motorola).)  Under § 286, therefore, those actions could have sought damages for alleged infringement dating back to, respectively, September 2005, December 2005, and February 2006.

But the district court's Dismissal Order significantly shortened the damages window.  Even AVT admits that Appellees' successful motion to dismiss likely would wipe out "considerable damages," which AVT characterizes as "painful." (AVT Br. at 30.)  For example, had AVT filed new patent suits against Appellees in May 2015 immediately after the Dismissal Order, AVT's damages claim would have been limited to acts of alleged infringement occurring in or after May 2009 only, shortening the damages window by more than three years.  Also, no going-forward damages would be available because the '788 patent expired in May 2015. (A202 (20 years from May 1995, the filing date of the '788 patent's parent).)

This shortening of the § 286 damages window did not simply reduce the monetary damage potential, but effectively freed certain accused products in the dismissed suit from any further claim of infringement.  For example, the Dismissal Order meant that any product accused in the first suit, if discontinued by May 2009, would be forever outside the reach of the '788 patent or AVT's claims thereunder.

The present suit is similar to *Sweepstakes Patent Co. v. Chase Burns*, No. 6:14-cv-151-Orl-22KRS, 2015 U.S. Dist. LEXIS 175691, at *9-15 (M.D. Fla. Nov. 24, 2015). In *Sweepstakes Patent*, the district court dismissed the suit for lack of standing. *Id.* at *3. In seeking attorneys' fees under § 285, the defendants argued that they were prevailing parties because the dismissal order reduced the potential damages available under 35 U.S.C. § 286. *Id.* at *5.

The *Sweepstakes Patent* court agreed. *Id.* at *14. Relying on this Court's decision in *Rice Servs., Ltd. v. United States*, 405 F.3d 1017 (Fed. Cir. 2005), the district court held that "the Federal Circuit held that prevailing-party status may be established through 'an enforceable judgment on the merits or a court-ordered consent decree that materially altered the relationship between the parties, *or the equivalent of either of those*.'" *Sweepstakes Patent*, 2015 U.S. Dist. LEXIS 175691, at *14 (quoting *Rice*, 405 F.3d at 1025 and adding emphasis). "[F]or [the] court action to be 'equivalent,' it must 'carr[y] sufficient imprimatur to materially change the legal relationship of the parties.'" *Id.* (quoting *Rice*, 405 F.3d at 1026.) The *Sweepstakes Patent* court accordingly held:

> [T]he [c]ourt's dismissal order, while without prejudice, changed the legal relationship of the parties by foreclosing the possibility of [the plaintiff]'s recovery for at least six months of its original damages period."

*Id.* The court further observed that "[a]lthough [the d]efendants did not achieve total victory, total victory is not required for a party to be deemed 'prevailing[,]'"

and found defendants to be prevailing parties.[5] *Id.*

So too here: the Dismissal Order gave Appellees judicially sanctioned relief by foreclosing AVT's damages claims—not just for six months as in *Sweepstakes Patent*, but for more than three years, which even AVT admits are "considerable." (AVT Br. at 30.)

In sum, AVT's waived arguments concerning Appellees' prevailing party status, even if considered, fail because the Dismissal Order legally and materially changed the relationship between Appellees and AVT. Appellees are therefore the prevailing parties under 35 U.S.C. § 285.[6]

## III. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN FINDING THAT THIS SUIT IS EXCEPTIONAL.

An "exceptional case" under 35 U.S.C. § 285 "is simply one that stands out

---

[5] The *Sweepstakes Patent* court later found the case not to be "exceptional" for unrelated reasons. *See Sweepstakes Patent Co. v. Chase Burns*, No. 6:14-cv-151-Orl-22KRS, 2016 WL 386060 (M.D. Fla. Feb. 2, 2016). That conclusion did not affect its earlier holding, discussed in the text, that "prevailing party" status could be based on reducing the potential damages available under § 286.

[6] A ruling in AVT's favor on the "prevailing party" issue would have adverse public policy implications. Under AVT's reasoning, a district judge would have no power to award attorneys' fees under Section 285 against a party who falsely claims to own a patent (no matter how egregious its conduct may be) because the defendant would not be a "prevailing party." Such a reading of the statute would not only incentivize frivolous suits to obtain quick settlements, as AVT did in five previous suits, but would also undermine the deterrence and compensation considerations articulated in *Octane Fitness*.

from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014); *see also Gaymar Indus., Inc. v. Cincinnati Sub-Zero Prods., Inc.*, 790 F.3d 1369, 1372 (Fed. Cir. 2015). The district court found this suit to be exceptional for several reasons, based on a lengthy, detailed and exhaustive factual analysis. Sanctions Order, 2015 WL 7621483, at *6-9; *see also* A76.

As an initial matter, the district court found that "suing on a patent one does not own," what AVT did, is not "normal litigation behavior." Sanctions Order, 2015 WL 7621483, at *6; *see also* A76. The district court further characterized AVT's arguments about its purported ownership of the '788 patent to be "exceptionally weak" (A78) because *inter alia* "AVT's proof of title to patent '788 was exactly nil" (A79). Sanctions Order, 2015 WL 7621483, at *9.

As explained in detail below, AVT's claim of ownership began by relying on a non-existent merger between AVC and Epogy. AVT attempted to obstruct Appellees' investigation of this supposed merger through baseless privilege claims. After having to concede that no such merger had occurred, three years into the litigation, AVT invented a frivolous theory about Epogy's alleged ownership of AVC's stock that had no more evidentiary support than its failed merger theory.

At each step along the way, AVT's positions regarding its non-existent title to the '788 patent stood out as objectively unreasonable and unjustified.

### A. AVT's Prior Chain-of-Title Theory Based on the Non-Existent Merger Between Epogy and AVC Was Frivolous.

The district court determined that imposition of sanctions on AVT is necessary "because ... the primary goal of Section 285 is to compensate parties who have been forced to defend against *frivolous and unwarranted suits*[.]" Sanctions Order, 2015 WL 7621483, at *14 (emphasis added; internal quotations and citations omitted); *see also* A84.

AVT had previously represented to everyone, including the USPTO, that the non-existent AVC-Epogy merger (short-form or otherwise) was how title to the '788 patent was transferred from AVC to Epogy. *See* Sanctions Order, 2015 WL 7621483, at *3; *see also* A72. But that position turned out to be so baseless that AVT had to abandon it three years after filing suit. Indeed, as the district court observed, "AVT now admits that [AVC and Epogy] never merged." Dismissal Order, 103 F. Supp. 3d at 415; *see also* A9.

AVT argues that it never represented that Epogy's intended merger with AVC (*i.e.*, the proposed absorption of AVC into Epogy in the "Purchase Offer Agreement" (*id.*)) was the means of title transfer from AVC to Epogy. (AVT Br. at 26-27.) AVT suggests that it was somehow always understood that the '788

patent would be transferred through Epogy's alleged 100% purchase of AVC's stock and the intended succession of AVC's assets.  (*Id.* at 22-23.)

While it is understandable why AVT now wants to reinvent history and distance itself from the "merger" theory on which it relied for more than a decade, AVT's revisionist arguments are unsupported by the record.  In particular, AVT's newly invented arguments are plainly contradicted by the express language of "Purchase Offer Agreement" recorded with the USPTO.  (A350-354.)  As noted by the district court with emphasis, that agreement expressly provides:

> [I]f less than 100% but 90% or more of the shares are proffered for purchase by Epogy, Epogy will close upon the purchase of the shares proffered … no later than July 31 , 2000.  Thereafter Epogy will pursue a statutory short form merger … *It is also Epogy's intent that upon closing 100% ownership by Epogy, AVC will be absorbed into Epogy (rather than maintained as a wholly owned subsidiary), and, subject to any limits on assignability with respect to AVT contracts, Epogy will succeed to all assets, rights, causes of action and claims of AVC, including, without limitation, … patents*[.]

Dismissal Order, 103 F. Supp. 3d at 414-15 (quoting A352) (emphasis in district court order).  AVT thus represented to the world that it would pursue "a statutory short form merger," and that upon closing, "AVC would be absorbed into Epogy rather than maintained as a wholly owned subsidiary." *Id.*  This made clear that the patent was to pass through a merger and not a mere 100% stock purchase, as the district court correctly found.  *See* Sanctions Order, 2015 WL 7621483, at *3; *see also* A72.

The correctness of the district court's finding is further supported by testimony and documents produced during litigation.  For example, Epogy's former CEO, Homer Chang, testified (albeit incorrectly) that Epogy "did do a merger" and "fold[ed] AVC under Epogy" in acquiring "everything" of AVC. (A469 at 20:9-12, A470 at 21:4-15; *see also* A469-470 at 20:24-21:18 ("Q. Is it your understanding that at this time frame at Epogy some form of merger occurred with AVC? A. Yes. … Q. What was the name of the – the entity moving forward from that point? A. Epogy.").)  Further, AVT's own principals referred to the "deal" between AVC and Epogy that had purportedly transferred the patent's title from AVC to Epogy as the "merger."  (A71-72; A536; A538.)  That is, both Epogy and AVT understood that "merger" was the intended means to transfer title from AVC to Epogy, although in reality no merger of any kind, short form or otherwise, ever occurred, as AVT concedes.  (A9.)  Thus, there is no error, let alone clear error, in the district court's finding that a merger was what AVT represented as the intended means to transfer title from AVC to Epogy.  *See* Sanctions Order, 2015 WL 7621483, at *3; *see also* A72.

### B.    AVT's Newly Invented Chain-of-Title Theory in Opposing Appellees' Motion To Dismiss Was Also Baseless.

Even before Appellees moved to dismiss, it became clear that AVT did not know how it would support a claim of title transfer from AVC to Epogy.  Shortly after the close of fact discovery, Appellees sent a letter to AVT pointing out the

defects in AVT's purported chain of title and giving AVT an opportunity to dismiss its suit without motion practice. (A73; *see also* A571-585.) AVT responded by refusing to dismiss the litigation, insisting that it owned the '788 patent. (A588-589.) But conspicuously absent from AVT's response was any evidence that the intended absorption of AVC into Epogy and acquisition of AVC's assets by Epogy under the "Purchase Offer Agreement" actually took place. (*Id.*) AVT's letter tellingly equivocated on the form of the alleged transaction in which Epogy allegedly acquired the patent rights from AVC. (*Id.*) This confirms that AVT knew at that time it could not support its later assertion that title passed based on Epogy's alleged 100% purchase of AVC's stock.[7] Yet, AVT still refused to dismiss its suit.

The district court found that AVT's objective unreasonableness "[wa]s underscored by the fact that the arguments propounded by AVT in opposing the motions to dismiss were *exceptionally weak*[.]" (A78 (emphasis added).) AVT's

---

[7] At that point, AVT had not yet obtained the declaration by Mr. Peter Courture, "an attorney who served as Epogy's incorporator, Secretary and Director back in 2000" (A22-23), to suggest Epogy's purported 100% purchase of AVC's stock. (*Compare* A587-589 (AVT's letter dated December 2, 2014) *with* A407-408 (Courture declaration dated December 16, 2014); *see also* A3473-478 (showing Mr. Courture's declaration was the only piece of evidence cited by AVT in its opposition to Appellees' motion to dismiss to actually suggest the purported 100% purchase of AVC's stock by Epogy); *see also* A22 n.3 (noting Mr. Courture's declaration was not produced during discovery).)

opposition attempted to walk away from the previous merger theory, instead arguing that Epogy acquired AVC's assets (including the '788 patent) by virtue of having had purchased 100% of AVC's stock before its dissolution.  (A108.)  *See Dismissal Order*, 103 F. Supp. 3d at 418-19 (observing that "AVT's theory of how Epogy came to acquire AVC's rights in the patent in suit ha[d] shifted over time.").  But as the district court found, AVT's change of position simply replaced one frivolous and unsupported theory with another.  AVT provided no evidence to even raise a genuine factual issue, let alone prove, that AVC transferred its interest in the '788 patent to Epogy under any theory:

> Had AVT provided a copy of its plan of distribution for AVC, or even testimony that such a plan was adopted and made provision for the immediate transfer of the patent rights, that might have raised a genuine issue of fact.  Had AVT provided a written assignment, or even testimony that one was made but cannot now be located, that could have raised a question of fact.  Going back to its original position, had AVT provided any evidence that the two corporations were merged, that would have raised a genuine issue of fact.

> But AVT has done none of these things.  It has merely provided a declaration from an attorney who recalls what was intended but evidently never done, and from the President of Epogy, who apparently believed that a merger took place when none ever did.  This 'evidence' falls far short of creating a genuine dispute as to any fact that would be *material* to resolving whether Epogy took title to the patent pursuant to a 'distribution of [AVC's] remaining assets' under Del. Code. Ann. tit. 8, § 281 (b) before it purported to assign its interest in the patent on January 15, 2003.

*Id.* at 425 (italics and brackets in original); *see also* A26.  As the district court found, "AVT's proof of title to patent '788 was exactly nil[,]" and "[i]ts arguments were all about wishes and hopes - not proof." (A79.) AVT conceded as much by choosing not to appeal the Dismissal Order. (A73.)

### C.    AVT's Reliance on Epogy's Representations and Warranties Was Unreasonable Because AVT Had Good Reasons To and Actually Did Doubt Their Reliability.

It was also objectively unreasonable for AVT to rely on the representations and warranties provided by Epogy, the opposite party to the transaction in which Mr. Gross allegedly acquired the patent.  AVT repeatedly argues that it acted reasonably because it relied on Epogy's statements and genuinely believed that it had title to the patent. (AVT Br. at 4, 18.) But the district court fully considered and rejected these explanations, and AVT has identified no error – let alone any clear error or abuse in discretion – in the district court's analysis.

The Supreme Court has made clear that a district court's determination of exceptionality is a "case-by-case exercise of [its] discretion, considering the totality of the circumstances." *Octane Fitness, LLC*, 134 S. Ct. at 1756.  The district court painstakingly considered all of those circumstances, including all of the steps AVT claimed to have taken.  The district court explained that AVT acted unreasonably by failing to "take the steps it could and should have taken to confirm its belief, and perhaps even consciously avoided taking those steps." (A75;

*see also* A87 ("[AVT's] principals [were] guilty of, at a minimum, conscious avoidance on [the patent ownership issue.]").)  The district court also identified many reasons why it was objectively unreasonable for AVT to rely on Epogy's representations that were obviously unreliable.  Sanctions Order, 2015 WL 7621483, at *6-7; A76-77.

The district court did not abuse its discretion nor clearly err in finding that it was unreasonable to rely on Epogy's statements and forgo AVT's own independent investigation – an investigation that would have revealed that the intended absorption of AVC into Epogy never happened.  AVT's objective unreasonableness is further underscored by the keen awareness of AVT's principals that there was no documentation to prove that this "deal" (*i.e.*, the intended AVC-Epogy "merger") ever occurred.  (A71-72.)

## D. The Fact that the USPTO and the Other Third Parties Never Challenged AVT's Alleged Title Does Not Support AVT's Purported Reasonableness.

AVT frivolously argues that it acted reasonably given that the USPTO and other companies it had sued did not challenge AVT's claim of ownership.  But this was merely because these third parties took AVT at its word when it represented that it owned the '788 patent.  That third parties might have accepted AVT's representation does not make AVT's conduct reasonable – to the contrary, it makes

these third parties victims of AVT's deceit.[8] (A78 (observing that "[b]luffing is what AVT did: it bluffed by confidently asserting that it owned the patent, knowing that no one was likely to call its bluff and force it to prove what it knew it could not really prove.").)

As the district court explained, there was no evidence that the USPTO undertook any significant scrutiny of AVT's assertion of ownership. Sanctions Order, 2015 WL 7621483, at *7-8; A77-78. With respect to the companies AVT had previously sued for infringement, the district court observed that those cases ended with quick settlements, "and the fact that some corporations chose to avoid the excessive cost of patent litigation says nothing about the validity of AVT's title." *Id.* The district court analogized AVT with "holders of home mortgages who lacked the documentation to prove that they actually owned the loans associated with homes on which they sought to foreclose, but who commenced foreclosure actions nonetheless, confident that their opponents would lack the wherewithal to demand firm proof of ownership." *Id.* Thus, as fully explained by

---

[8] It is troubling that AVT would attempt to rely on the fact that third parties settled and took licensees under the '788 patent. AVT had no ownership interest in the '788 patent at the time of those prior settlements, and thus, had no power to grant licenses to those third parties. Had AVT not belatedly secured a purported patent assignment from AVC's Receiver appointed by the Delaware Court of Chancery, which was only a result of Appellees' successful motion to dismiss, these third parties might have paid AVT for nothing.

the district court, the fact that the USPTO and other third parties never challenged AVT's claim of ownership did not make AVT's conduct reasonable.

### E.    AVT Interfered with Appellees' Investigation of the Title Issue by Asserting Baseless Privilege Claims.

AVT's assertion that Appellees could have raised the ownership issue and sought discovery earlier in the litigation has no merit. (AVT Br. at 24.) As an initial matter, it had always been AVT's burden and duty to prove title to the patent. *Abbott Point of Care, Inc. v. Epocal, Inc.*, 666 F.3d 1299, 1302 (Fed. Cir. 2012) (patentee "has the burden to show necessary ownership rights"). Moreover, the timing of this issue was largely attributable to AVT's attempt to withhold and conceal relevant documents in discovery, including the email from Mr. Gross dated May 8, 2003 confirming the lack of any documentation to show a transfer of title. (A538.) On October 17, 2014, AVT and its counsel abruptly clawed back the email only days before Mr. Gross's deposition, preventing Appellees from questioning Mr. Gross about that email. (A925; A878; A73.) Appellees were thus forced to raise the issue with the magistrate judge, who ruled that AVT improperly clawed back and withheld the email (and ordered the production of not only that email but also all similarly withheld documents). (A509.) AVT, conceding as much, did not appeal the magistrate judge's ruling to the district court. Thus,

AVT's objective unreasonableness is further supported by its attempt to hide from Appellees relevant documents, particularly Mr. Gross's May 2003 email.[9]

### F. AVT's Shifting Legal Positions Confirmed that AVT Never Had Any Reasonable Basis To File or Maintain Suit.

The eleventh-hour switch in AVT's chain-of-title theory more than three years after filing suit is telling. (A15.) The switch confirms that AVT had no reasonable basis to rely on Mr. Chang's representations or the warranties he made on Epogy's behalf[10] (regarding the "merger" and Epogy's non-existent title, for instance) without investigating and verifying them independently. Even a minimal pre-suit investigation by AVT would have confirmed the lack of evidence to prove title, especially when AVT's co-founder and 50% owner, as well as AVT's in-house counsel and manager, had known about the issue since 2003. (A71-72.) Therefore, AVT's abandonment of the merger theory it had held for three years demonstrates AVT's lack of pre-suit diligence.

---

[9] Evidently, AVT even hid that email from its own outside counsel until March 2014. (*See* A73 (observing that AVT's counsel did not receive the critical Gross-Cohen email exchange until March 2014).)

[10] The "Intellectual Property Purchase Agreement" that contained Epogy's purported representations and warranties upon which AVT relied had been signed by Mr. Homer Chang. (*See* A742; *see also* A76.)

Additionally, rather than dismissing the suit after realizing it could not advance the merger theory, AVT invented a brand new theory that had never been previously raised or even hinted at throughout more than three years of litigation. In particular, AVT's new theory was based on a selective reading of statutes and had no legal or factual basis, which the district court found was "exceptionally weak." (A78.) The fact that AVT did not even attempt to appeal the dismissal is telling. (A73.) AVT had strong incentives to appeal because, as it admits, AVT "may [painfully] lose considerable damages due to the dismissal of the original cases." (AVT Br. at 30.) Had AVT had *any* colorable basis to appeal at all, it would have done so by at least filing a notice of appeal to preserve the right to potentially overturn the dismissal.

AVT incorrectly argues that "[its] claims cannot reasonably be viewed as 'frivolous' for several reasons, including:"

> (i) the strength of its infringement claims; (ii) the strength of the validity of the patent …; (iii) the number of prior successful lawsuits … ; (iv) the number [and value] of licensees … (v) the fact that the present actions went on for roughly three years … (vi) the fact that each of the successive "owners" of the '788 patent held a good faith belief …; and (vii) the fact that Epogy and Mr. Gross both provided representations and warranties ….

(AVT Br. at 25-26.) As the district court observed, AVT "fundamentally misconstrues *Octane Fitness*" by focusing on these irrelevant items that are "not the appropriate frame of reference":

> Instead, [what ]AVT should be addressing[ is] the strength of its arguments claiming *patent ownership* – the ground on which these actions were dismissed.  And on that score, <u>AVT's proof of title to patent '788 was exactly nil.  Its arguments were all about wishes and hopes – not proof</u>.

(A78-79 (italics in original; underlining added).)   The district court also pointed out that "[b]luffing [on its non-existent ownership] is what AVT did" to achieve the so-called success in AVT's past lawsuits and licenses:

> [AVT] bluffed by confidently asserting that it owned the patent, knowing that no one was likely to call its bluff and force it to prove what it knew it could not really prove.  *That cannot be equated with having an objectively reasonable belief that there was no defect in AVT's title to the '788 patent.*

(A78 (emphasis added).)   AVT's argument that "AVT is the victim of another unrelated party's inadvertent mistake" (AVT Br. at 30) is similarly meritless because AVT was supposed to investigate given the known title issue:

> AVT tries to escape liability with its blame-shifting *tua culpa*, asserting that "AVT is the victim of another unrelated party's inadvertent mistake."  On the contrary: *AVT* had a duty to investigate its chain of title before initiating this suit.  And *AVT* failed to follow up on what turned out to be its well-founded concerns that it would not be able to prove title if ever put to the task.  <u>By failing to do that, AVT's assertion of ownership of the '788 patent was objectively unreasonable.</u>

(A78 (citation omitted) (italics in original; underlining added) .)

## G.   Considerations of Compensation and Deterrence Favor Sanctions.

AVT also incorrectly argues that "'considerations of compensation and deterrence' heavily weigh[ ] against any fee award[ because] AVT promptly

requested a stay" after learning about the standing issue.  (AVT Br. at 29.)  As an initial matter, the district court awarded no fees associated with work done after AVT's offer to stay, rendering AVT's arguments on this point irrelevant.  (*See* A84 (awarding only fees associated with the entire litigation on AVT's title and the successful portions of the motions for sanctions).)

AVT's offer to stay the case (after the safe harbor period under Rule 11 had expired) also did not make this case any less exceptional under § 285.  At that point, discovery was already closed and the case had been proceeding for more than three years.  AVT's offer to stay, after Appellees had called out the title issue AVT had known since 2003, was too little too late.  AVT knew that, once the motion to dismiss was filed, the chickens would come home to roost with respect to its lack of ownership of the '788 patent.  Had AVT been so confident that it actually owned the '788 patent, it would not have so quickly volunteered to stay the suit pending disposition of the motion to dismiss.

As the district court recognized, "the primary goal of Section 285 is to compensate parties who have been forced to defend against frivolous and unwarranted suits[.]"  (A84 (internal quotation and citation omitted).)  "If the [Appellees] here would have simply capitulated to AVT's demands, as the settling defendants did in AVT's prior lawsuits, AVT would likely have continued prosecuting lawsuits to obtain licenses of a patent it did not own – *predatory*

*behavior by any standard*." (*Id.* (emphasis added).) Thus, it was not an abuse of discretion for the district court to rely on considerations of compensation and deterrence in awarding Appellees their reasonable attorneys' fees.

### H. The Cases Cited by AVT Do Not Diminish Its Objective Unreasonableness in Filing and Maintaining Suit.

AVT's reliance on *TriReme*, in which the plaintiff lacked standing because a consulting agreement extinguished the inventor's rights to the patent, is misplaced. *TriReme Med., LLC v. AngioScore, Inc.*, No. 3:14-cv-02946-LB, 2015 WL 3463500, at *1-2 (N.D. Cal. May 29, 2015). The district court expressly distinguished *TriReme*, explaining:

> AVT and TriReme are not similarly situated. *AVT was aware of the possible defect in title from the very beginning.* It had doubts that such a deal was ever formally recorded and that there would be any way to prove AVT's chain of title based on the supposed merger. *AVT took no steps to confirm whether a merger had taken place – not through the simple expedient of state corporate filing records or through tracking down what Gross believed were hundreds of letters from AVC shareholders agreeing to the merger.*[11] *This failure is inexcusable.* Unlike TriReme, AVT could not claim to have found out belatedly about the existence of doubt concerning its ownership rights.

(A79 (emphasis added).)

AVT also attempts to rely on the *Orbit* case to argue that the present suit is

---

[11] Evidently, not a single such letter to which Gross referred in his email to Cohen was ever produced. (A71-72.) Mr. Gross testified that he could not recall if he had ever personally seen any of those alleged letters. (A775 at 288:23-289:5.)

not exceptional.  *Orbit Irrigation Prods., Inc. v. Sunhills Int'l, LLC*, No. 1:10-CV-113 TS, 2015 WL 7574766, at *2 (D. Utah Nov. 25, 2015).  But *Orbit* is readily distinguishable because, unlike the patentee in *Orbit*, AVT did not just lack standing to sue, it actually had absolutely zero interest in the patent at the filing or during the entire pendency of this suit.

AVT cites other cases essentially for the incorrect proposition that absent litigation misconduct, the finding of "exceptional[ity]" cannot be sustained.  (AVT Br. at 29-32.)  But there is no requirement of misconduct before a case can be determined to be "exceptional" under *Octane Fitness*.  134 S. Ct. at 1757 (rejecting the proposed "dual requirement of 'subjective bad faith' and 'objective baselessness'").  The only requirement is that the case "stands out," for which the correct standard is "objective unreasonableness" (*inter alia*) considering the totality of circumstances, which the district court found was more than abundant on AVT's part.  (A76-79); *Octane Fitness*, 134 S. Ct. at 1756 n.6.  Notwithstanding, the district court did find misconduct of a sort in the present suit.  In particular, the district court found that "AVT … perhaps … *consciously avoided taking* [*the*] *steps*" that "it could and *should* have taken to confirm its [mistaken] belief [about title.]"  (A75 (emphasis added); *see also* A87 (AVT was "*guilty of, at a minimum, conscious avoidance* on [the known title issue.]") (emphasis added).)  As observed by the district court:

The bottom line here is that AVT, in the person of Gross and Cohen (representing GPC, a sophisticated patent monetization entity), were fully aware, in May of 2003, that there was a gap in AVT's chain of title to the patent. They were also aware that they could not bridge that gap with evidence demonstrating that AVC had actually consummated the proposed transaction with Epogy, thereby transferring title to the patent to Epogy. <u>Knowing that it could not prove good title rendered any reliance by AVT on the beliefs or the statements of AVC and Epogy *objectively* unreasonable – even if Gross and Cohen actually (i.e., **subjectively**) believed that AVT had title.</u>[12][13]

(A78 (italics in original; underlining and bold added).)  Based on the May 2003 email exchange between Gross and Cohen (A71-72; A536; A538), the district court's findings on AVT's knowledge of the title defect were not erroneous, let alone clearly erroneous.

––––––––––––––––––––

[12] *See, e.g., British Caledonian Airways, Ltd. v. First State Bank of Bedford, TX,* 819 F.2d 593, 596 (5th Cir. 1987) ("The test for *good faith* is the <u>*actual* belief</u> of the party in question, *not the <u>reasonableness</u> of that belief*.") (internal quotation and citation omitted) (italics in original; underlining added); *see also March Madness Athletic Ass'n v. Netfire, Inc.*, 310 F. Supp. 2d 786, 814 (N.D. Tex. 2003) ("despite whatever Defendants['] subjective beliefs may have been, they certainly did not have 'reasonable grounds'" for such "subjective beliefs"); *see also Fromson v. United States*, 32 Fed. Cl. 1, 11 (Fed. Cl. 1994) (finding "subjective beliefs were not reasonable as a matter of law and in light of the circumstances"); *see also DCA Food Indus., Inc. v. Tasty Foods, Inc.*, 626 F. Supp. 54, 61 (W.D. Wis. 1985) (distinguishing "subjective impression" from "reasonabl[e] belie[f]").

[13] Thus, AVT's conflation and confusion between the "subjective belief" and the "objective reasonableness" should be rejected.

In sum, the district court's determination that the present suit is "exceptional" based on the accurate findings of fact is not an abuse of discretion,[14] and is entirely warranted under § 285 and *Octane Fitness*. This Court should therefore affirm the district court's "exceptional case" ruling.

## IV.    THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DETERMINING THE FEES AMOUNTS.

### A.    The Awarded Fees Amounts Are Reasonable Because Appellees Obtained Significant Success in Getting This Suit Dismissed.

AVT's arguments against the amounts of the attorneys' fee awards consist of little more than a rehashing of its already failed objections in the district court. (A30-31.)  AVT agrees that "[i]n calculating an award of reasonable attorneys' fees in a civil case, the District Court should focus on the significance of the overall relief obtained by the [Defendants] in relation to the hours reasonably expended on the litigation" and that "*the most critical factor is the degree of*

---

[14] AVT admits that "[t]he factors courts look to include whether a party knew or willfully ignored evidence of the claims' lack of merit; whether the lack of merit could have been discovered by basic pretrial investigation; or whether the lack of merit was made clear early in the litigation."  (AVT Br. at 30.)  All of these factors favor sanctions because, as found by the district court:  (1) AVT's principals knew but consciously avoided the ownership issue (A31; A71-72; A75); (2) Even a basic investigation of the public records would have confirmed AVT's suspicion that it could not prove title (A72; A78-79); and (3) AVT was fully aware of this title issue since 2003, years before filing suit against Appellees (A71-72; A78).  Thus, by AVT's own admission, the district court did not abuse its discretion in awarding sanctions after considering these factors.

*success obtained.*"  (AVT Br. at 34 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 435-36 (1983)) (internal quotations omitted) (emphasis added).)  Appellees' high degree of success in obtaining dismissal of AVT's claims against Appellees after their painstaking work is undeniable.  In particular, the Dismissal Order wiped out AVT's previously claimed right to sue Appellees altogether, as confirmed by AVT's decision not to appeal the dismissal and to have to obtain a new assignment directly from AVC.  Further, even AVT admits that Appellees' successful motion to dismiss likely would result in AVT's loss of "considerable damages," which AVT characterizes as "painful."  (AVT Br. at 30.)  Thus, the fees are justified by Appellees' success.

Also, according to AVT, many other companies and their attorneys from prominent law firms failed to obtain the same success even after rigorous litigation. (*See* A3523 (claiming that after years of litigation and licensing negotiations since 2008, "none of the accused infringers [, including Apple, Inc. and Pure Digital, or their attorneys, including Quinn Emmanuel – 'a top tier national patent litigation firm, with a reputation for leaving no stone unturned,'] ever suggested that there was any defect in AVT's title to the '788 Patent.").)  Compared with what had transpired with those settling third parties, Appellees' success in stopping AVT's "predatory behavior" is significant, as observed by the district court with approval. (A84.)  Thus, AVT's arguments about the other parties' settlements actually

highlight Appellees' success, and thus support the reasonableness of the awarded

fees, in getting the suit dismissed based on AVT's lack of title.

**B.    Only Fees Incurred for Work Not Transferrable to the New Cases Have Been Awarded.**

In light of the new cases filed by AVT, the district court already

significantly limited the scope of the awarded attorneys' fees.  In particular, the

district court awarded sanctions based only on work "not transferrable to the new

cases" for which the incurred fees would be "appropriately imposed on AVT":

> The _entire_ litigation over [_AVT's_] _title_ – including the proceeding before [the magistrate judge] to compel use of the clawed-back document and production of related documents; the second session of Gross's deposition (which was necessitated by the claw back of the critical e-mail exchange and the failure to produce related documents), and the successful motions to dismiss for lack of subject matter jurisdiction – [and] the 35 U.S.C. § 285 joint motion, on which [Appellees] succeeded.

(A84 (emphasis added); _see also id._ ("The attorneys' fees … that were incurred in

connection with matters relating to the ownership issue are appropriately imposed

on AVT.").)  The district court clarified that Appellees were not entitled to fees "of

the Rule 11 motion, or as much of the joint motion as argued under 28 U.S.C.

§ 1927 and inherent power (which [the district court] view[ed] as a negligible part

of the § 285 motion)."  (A84.)  Thus, the district court did not abuse its discretion

in setting the amounts of awarded attorneys' fees by significantly limiting the

scope of the awards.

**C.    The Issues Involved Were Numerous and Complicated, so the Fees Amounts Awarded Are More than Reasonable After the District Court Applied Significant Discounts.**

The amounts set by the district court are reasonable and not an abuse of discretion also because of the complexity of the ownership related issues:

> I have no real quarrel with the fact that a huge amount of time was needed to unravel this particular *Gordian Knot*. The issues were numerous and complicated. There were issues of both fact and law to resolve. This effort involved discovery (including the litigation of a major discovery dispute), legal research, and the preparation of extensive presentations for both Magistrate Judge and the court. *I know it took a lot of hours to work through this problem, because a law clerk and I spent what I consider to be an inordinate amount of time trying to understand and analyze the various issues raised by this motion – and we, unlike counsel, were not starting from scratch, but had the benefit of all the work performed by the lawyers on this case.*
>
> Furthermore, I have personally reviewed Cooley's redacted time records, and it appears to me that *Cooley has carefully pruned away work done on matters not comprehended by this court's August 28 order*. Cooley has also agreed to withdraw requests for some … fees that arguably relate to the Rule 11 motion, which was unsuccessful. The court further finds that the hourly rates for services performed by attorneys at Cooley were reasonable. The court notes that Cooley gave its client a 12% discount off its billable rates, which is reflected in its request [of $712,863 after such discount].

(A31 (citation omitted) (emphasis added).) Considering that AVT apparently hid critical facts even from its own outside counsel, it is no surprise that a tremendous amount of work by Appellees was required to uncover and demonstrate AVT's lack of title. (*See* A73 (observing that AVT's counsel did not receive the critical Gross-Cohen email exchange until March 2014).)

But the district court recognized that some duplication of work resulting from the number of professionals working on the case was "inevitable." (A32.) In addressing this issue, the district court applied "a 20% discount (over and above the 12% already worked into the bill sent to [HTC, which] effectively takes one-third off the full value of Cooley attorneys' billable hours." (*Id.*; A31.) The district court also excluded "fees attributable to the work of nonlawyers." (A32.) The district court imposed similar discounts and limitations on BlackBerry's and Motorola's claimed fees after reviewing their invoices. Thus, the district court already limited the fees amounts within its sound discretion.

AVT argues that the awards did not include matters concerning Ms. Hsiun, a named inventor of the patent who Appellees argued in their motion to dismiss had never assigned her interest to any of AVT's predecessors-in-interest. *See Dismissal Order*, 103 F. Supp. 3d at 412-414, 417. But the district court recognized that work associated with the "*entire* litigation over [AVT's] title" was "not transferrable to [AVT'] new cases[, and thus t]he attorneys' fees … incurred in connection with matters relating to the ownership issue are appropriately imposed on AVT." (A84 (emphasis added).) The work concerning Ms. Hsiun was clearly part of the "*entire* litigation over [AVT's] title" for which fees were

awarded. (*Id.*)  In particular, the district court pointed out those fees "would never have been incurred if AVT had not brought suit on a patent it did not own."[15]  (*Id.*)

Contrary to AVT's misleading suggestion, the district court *never* limited the sanctions award to only the specific items listed by AVT, which were named only as examples of the *required* items to be included.  Thus, work done in connection with Ms. Hsiun was well within the scope of the district court's awards.

AVT's other complaints about the awarded fees being out of scope for "expert witness related issues, work spent on damage calculations, communications related to matters as vaguely described as 'recent developments,' and HTC's work spent on calculating attorneys' fees" are waived and meritless.

AVT never raised these arguments when objecting to HTC's invoices submitted after the Sanctions Order before the district court.  (*Compare* AVT Br. at 38 with A3555-559.)  Thus, AVT cannot raise these arguments for the first time on appeal.  *See, e.g., Askins*, 727 F.3d at 252; *see also Singleton*, 428 U.S. at 120; *see also Golden Bridge Tech.*, 527 F.3d at 1322; *see also Sage Prods.*, 126 F.3d at 1426.  AVT's arguments also have no merit because, after having "*personally*

---

[15] By the same token, the district court also awarded attorneys' fees associated with the successful portions of the motion for sanctions under 35 U.S.C. § 285.  While the district court excluded fees "of the Rule 11 motion, or as much of the joint motion as argued under 28 U.S.C. § 1927 and inherent power[,]" the district court "view[ed them] as a negligible part of the § 285 motion."  (A84 (emphasis added).)

reviewed" the record, the district court already found that HTC's counsel had "carefully pruned away work done on matters not comprehended by" the Sanctions Order.  (A31-32 (emphasis added).)  The district court made similar findings regarding Motorola's and BlackBerry's claimed fees after reviewing their fees records.  (*See*, *e.g.*, A33-36.)  Thus, AVT has not provided any basis to second-guess the district court's discretionary determination.

In sum, the district court did not abuse its discretion in awarding the significantly discounted fees amounts that were determined based on the district court's own review of the documentation submitted by the Appellees.

## **CONCLUSION AND STATEMENT OF RELIEF SOUGHT**

For at least the above reasons, the district court had strong reasons for finding the present suit "exceptional" and for determining the awarded fees amounts. The district court applied the correct legal standard, and its factual findings were not erroneous, let alone clearly erroneous. Thus, the district did not abuse its discretion in its "exceptional case" and fees amounts rulings. This Court should therefore affirm the district court's rulings in their entirety.

Dated:  May 19, 2016

Respectfully submitted,

COOLEY LLP

HEIDI L. KEEFE
MARK R. WEINSTEIN
KYLE D. CHEN

By:  */s/ Kyle D. Chen*
     Kyle D. Chen
*Attorneys for Defendants – Appellees*
*HTC CORPORATION and*
*HTC AMERICA, INC.*

VENABLE LLP

WILLIAM D. COSTON
JEFFRI A. KAMINSKI
CHRISTOPHER T. LA TESTA

By:  */s/ Christopher T. La Testa*
    Christopher T. La Testa

*Attorneys for Defendants – Appellees*
*BLACKBERRY LTD. and*
*BLACKBERRY CORPORATION*

KILPATRICK TOWNSEND &
STOCKTON LLP

FREDERICK L. WHITMER
STEVEN D. MOORE
D. CLAY HOLLOWAY
AKARSH P. BELAGODU

By:  */s/ D. Clay Holloway*
     D. Clay Holloway

*Attorneys for Defendant – Appellee*
*MOTOROLA MOBILITY LLC*

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

ADVANCED VIDEO TECHNOLOGIES, LLC,

v.

HTC CORPORATION, HTC AMERICA, INC., BLACKBERRY LTD,
BLACKBERRY CORPORATION, MOTOROLA MOBILITY, LLC, aka
Motorola Mobility, Inc.,

Nos. 16-1476, -1514, -1515

**CERTIFICATE OF SERVICE**

I, John C. Kruesi, Jr. being duly sworn according to law and being over the
age of 18, upon my oath depose and say that:

Counsel Press was retained by Cooley LLP, Counsel for Defendants-
Appellants, to print this document. I am an employee of Counsel Press.

On **May 19, 2016** counsel authorized me to electronically file the foregoing
**APPELLEES' CONSOLIDATED RESPONSE BRIEF** with the Clerk of Court
using the CM/ECF System, which will serve via e-mail notice of such filing to all
counsel registered as CM/ECF users, including any of the following:

**Attorneys for Appellant ADVANCED VIDEO TECHNOLOGIES, LLC:**

Robert W. Morris
Ojeiku Christopher Aisiku
Thomas Martin Smith
Eckert Seamans Cherin & Mellott, LLC
10 Bank Street, Suite 700
White Plains, NY 10606
rwmorris@eckertseamans.com
oaisiku@eckertseamans.com
tsmith@eckertseamans.com

Paper copies will also be mailed to the above principal counsel when copies are sent to the Court.

Upon acceptance by the Court of the e-filed document, six paper copies will be filed with the Court within the time provided in the Court's rules.

Dated:  May 19, 2016                           _____/s/ John C. Kruesi, Jr._____
                                                                Counsel Press

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

ADVANCED VIDEO TECHNOLOGIES, LLC,

v.

HTC CORPORATION, HTC AMERICA, INC., BLACKBERRY LTD,
BLACKBERRY CORPORATION, MOTOROLA MOBILITY, LLC, aka
Motorola Mobility, Inc.,

Nos. 16-1476, -1514, -1515

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.      This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) or Federal Rule of Appellate Procedure 28.1(e).

☒      The brief contains 11,833 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii), or

☐      The brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) or Federal Rule of Appellate Procedure 28.1(e) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

☒      The brief has been prepared in a proportionally spaced typeface using MS Word 2010 in 14-point Times New Roman font, or

☐      The brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated:  May 19, 2016                    By:  */s/ Kyle D. Chen*
                                        Kyle D. Chen
                                        Attorneys for Defendant-Appellant
                                        HTC CORPORATION and
                                        HTC AMERICA, INC.


                                        By:  */s/ Christopher T. LaTesta*
                                        Christopher T. LaTesta
                                        Attorneys for Defendants – Appellees
                                        BLACKBERRY LTD. and
                                        BLACKBERRY CORPORATION


                                        By:  */s/ D. Clay Holloway*
                                        D. Clay Holloway
                                        Attorneys for Defendant – Appellee
                                        MOTOROLA MOBILITY LLC


131970233